IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOYCE LARSON, individually and on behalf of all persons similarly situated | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) )  Case No.  5:21-cv-00077-TTC |
| TRUE SELECT, LLC, *et al.* | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

Defendants True Select, LLC d/b/a FirstLight Home Care ("True Select"), GuardianLight of Northwestern VA Incorporated d/b/a FirstLight Home Care ("GuardianLight") and Kendra Ghanbari (collectively, "Defendants") state as follows for its Memorandum in Opposition of Plaintiff's Motion for Conditional Certification.

**I.   BACKGROUND**

GuardianLight and True Select separately employ different categories of workers to provide home care services to the elderly and others who require hands-on home care. *See* Ex. A, Declaration of Kendra Ghanbari ("Ghanbari Decl.") at ¶ 11; Ex. B, Declaration of Brittany Stevens ("Stevens Decl.") at ¶¶ 4-5; Ex. C, Declaration of Tiffany Bowman ("Bowman Decl.") at ¶¶ 4-5; Ex. D, Declaration of Juana Lopez ("Lopez Decl.") at ¶¶ 4-5.  GuardianLight operates out of Winchester, Virginia and the office is managed by Wendy Stanton ("Ms. Stanton"), Office Manager.  Ex. A, Ghanbari Decl. at ¶¶ 7-8.  Ms. Stanton manages and directs the staff in Winchester, and she managed Plaintiff during the period she was employed as an Office Assistant for GuardianLight.  *Id.* at ¶ 8.  True Select, on the other hand, operates out of Charlottesville, Fairfax, Manassas, and Vienna, Virginia and each location is similarly managed by its local Office

1

Manager. *Id.* at ¶¶ 9-10. Kendra Ghanbari ("Ms. Ghanbari") owns True Select and is a majority owner of GuardianLight. *Id.* at ¶¶ 2, 4.

Plaintiff has identified the categories in her definition of the class at issue in this case as "Caregivers, Home Health Aides, Certified Nursing Assistants, Care Coordinators,[1] Companion Care, and Personal Case [sic] Assistants" (hereafter referred to as "Home Care Workers"). *See* Compl. (ECF No. 1) at ¶¶ 8-9. Most Home Care Workers work varying shifts and perform services for various clients, on an as needed basis at the clients' homes. Ex. A, Ghanbari Decl. at ¶ 16; Ex. B, Stevens Decl. at ¶ 8; Ex. C, Bowman Decl. at ¶ 7. Home Care Workers are compensated in one of two ways by the True Select and GuardianLight ("Companies"): (1) hourly or (2) on a flat-rate basis, when they provide live-in caregiving and/or companion services. Ex. A, Ghanbari Decl. at ¶¶13-14; Ex. B, Stevens Decl. at ¶ 6; Ex. C, Bowman Decl. at ¶ 6; Ex. D, Lopez Decl. at ¶ 6. Conversely, GuardianLight and True Select also employ Office Managers and Office Assistants who are paid on a salary basis and are engaged in higher level work, such as handling patient case management and recruiting and training staff. Ex. A, Ghanbari Decl. at ¶ 16.

Plaintiff worked for GuardianLight as an Office Assistant from March 1, 2021 until September 2021 and for True Select as a Companion Caregiver on the weekends from March 2021 through November 1, 2021. *Id.* at ¶¶ 19, 21. On November 3, 2021, Plaintiff filed her Complaint for violations of the Fair Labor Standards Act ("FLSA") (Count II) and the Virginia Overtime Wage Act ("VOWA") (Count I), including multiple acts of retaliation. On January 4, 2022, Plaintiff filed her Motion for Conditional Certification requesting the court permit this case be

---

[1] While GuardianLight and True Select employ Caregivers, Home Health Aides, Certified Nursing Assistants, Companion Care, and Personal Case [sic] Assistants, neither entity employs "Care Coordinators" as identified by Plaintiff in her definition of the Class. *Id.* at ¶¶8-9.

2

litigated as a collective action. *See* Motion for Conditional Certification (ECF No. 13); Memorandum of Law in Support of Plaintiff's Motion. (ECF No. 14).

As set forth in more detail below, the collective action sought by Plaintiff is improper because (1) Plaintiff is not a proper class representative because her claims are not typical of the class as a whole; (2) Plaintiff has failed to offer sufficient factual evidence to support her motion for conditional certification; (3) the Home Care Worker classification is too broad to achieve the requisite 'similarly situated' component under the "notice" stage of the FLSA; and (4) Plaintiff's claim for retaliation will predominate this litigation and require significant and individual factual and legal analysis with regard to Plaintiff that is separate and distinct from the wage and hour FLSA claims.

## II. **LEGAL STANDARD**

District courts in the Fourth Circuit typically follow a two-stage procedure for certification of collective actions. *See Purdham v. Fairfax County Public Schools*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). Although "nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process." *Swales v. KLLM Transport Services*, 985 F.3d 430, 440 (5th Cir. 2021); *see also Sloane v. Gulf Interstate Field Services, Inc.*, M.D. Pa. No. 4:16-CV-01571, 2017 WL 1105236, at *6 (M.D. Pa. Mar. 24, 2017) (noting that the two-step approach is nowhere mandated).

In the first stage of the typical two-stage procedure, the court decides whether to certify based on the limited factual record before it. *See Sloane*, M.D. Pa. No. 4:16-CV-01571, 2017 WL 1105236, at *6. The primary focus at this stage is whether the "potential plaintiffs are similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Stone v. SRA Int'l, Inc.*, No. 2:14CV209, 2014 WL 5410628, at *2 (E.D. Va. Oct. 22, 2014) (internal

3

quotations omitted). In addition, the court screens to ensure that the proposed class is judicially manageable, and if it should be limited. *See id.* at *8-9.

Although this standard is less onerous than what exists at the second, "decertification stage," of this process, it is "not invisible." *Purdham*, 629 F. Supp. 2d at 548. "Mere allegations will not suffice; some factual evidence is necessary." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). There must be a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *See D'Anna v. M/A Com, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995). Even if a plaintiff makes an initial showing that potential plaintiffs are similarly situated, a motion for conditional certification may still be denied where evidence exists that the necessity of individualized FLSA determinations makes certification inappropriate. *See Purdham*, 629 F. Supp. 2d at 549.

### III. ARGUMENT

#### A. **Plaintiff Is Not A Proper Representative of the Home Care Worker Class.**

Given that this case revolves around the Companies' alleged failure to pay overtime compensation to its Home Care Workers, it is imperative that some evidence is shown by Plaintiff, as the sole representative, that potential opt-in members are similarly situated to her. In this case, there are numerous dissimilarities between the factual setting surrounding Plaintiff's employment with GuardianLight and True Select and other potential members of the class.[2]

First, Plaintiff is one of a minority of individuals who performed over 40 hours of work across both GuardianLight and True Select. *See* Ex. A, Ghanbari Decl. ¶ 23. Plaintiff's declaration

---

[2] Counsel for Defendants previously explained the various issues surrounding Plaintiff's proposed status as a representative of the class to Plaintiff's counsel on December 6, 2021. *See* Ex. E (Letter dated December 6, 2021). As Plaintiff has not amended her Complaint to add any other potential members of the class, Defendants are not aware of any proper representative for the proposed class.

in support of her Motion is notably silent as to the number of employees who performed work for both entities, or how frequently, or who worked overtime when they did work for both entities.

Second, Plaintiff, as an Office Assistant for GuardianLight, performed duties which were administrative in nature and thus, she does not have sufficient knowledge of GuardianLight's employment practices and policies for Home Care Workers. *See* Declaration of Joyce Larson ("Larson Decl.") (ECF No. 13-3) at ¶ 3; Ex. A, Ghanbari Decl. at ¶ 20.

Third, most Home Care Workers worked varying shifts or performed services for various clients in different locations. Ex. A, Ghanbari Decl. at ¶ 16; Ex. B, Stevens Decl. at ¶ 8; Ex. C, Bowman Decl. at ¶ 7. In contrast, aside from one other occasion, Plaintiff only provided services for one True Select client in the Winchester area and declined to provide services to other clients. Ex. A, Ghanbari Decl. at ¶ 24. Thus, Plaintiff has no personal knowledge of True Select's employment practices and policies, in general, or with regard to its practices under the FLSA, in particular, for Home Care Workers at its Manassas, Vienna, Charlottesville, or Fairfax locations.

Fourth, Plaintiff also worked on a set schedule, almost exclusively on weekends, unlike other members of the class who worked on an as needed basis. Ex. A, Ghanbari Decl. at ¶¶ 16, 23-24; Ex. B, Stevens Decl. at ¶ 8; Ex. C, Bowman Decl. at ¶ 7. As such, her schedule was not typical of the class and any alleged damages would vary throughout the class.

Fifth, Plaintiff primarily provided companion care services, rather than health-based caregiving services, unlike a majority of the members of the class (Ex. A, Ghanbari Decl, at ¶ 24), and cannot show that she had similar job duties to other potential members of the class.

Last, it is clear that Plaintiff is not a proper representative of the class as Defendants have already offered her full recovery under the FLSA and VOWA. In particular, after receiving a copy of the Complaint in this action, but before being formally served with the Summons, Defendants

tendered full payment for all alleged overtime payments owed to Plaintiff under the FLSA.[3] Specifically, Defendants reviewed the payroll records of True Select and GuardianLight for instances in which Plaintiff worked for both entities and combined the hours to calculate that amount of overtime she was seeking. Based on those initial calculations, Defendants calculated the overtime based on a total of 681.46 hours for an amount of $4,429.56, which Defendants direct deposited into Ms. Larson's account on November 8, 2021.[4] Ex. A, Ghanbari Decl. at ¶ 31. Further, in terms of discovery, Defendants already provided Plaintiff's counsel with a copy of all of Plaintiff's time records for her companion care position and paystubs for both entities to demonstrate that she was properly compensated. *See* Ex. E (Letter dated December 6, 2021). Since then, Defendants' have also made an offer to Plaintiff to settle her FLSA claim for the remaining liquidated damages allegedly owed to her, in addition to an amount for her reasonable attorneys' fees.[5]

### B. Plaintiff Has Failed to Show How All Potential Opt-In Class Members Are Similarly Situated, Warranting Class Certification.

Determinations of the appropriateness of conditional collective action certification and court-facilitated notice are left to the court's discretion. Although plaintiffs need only put forward "relatively modest" evidence that they are similarly situated in order to obtain approval to proceed as a class, *see D'Anna v. M/A–COM, Inc.*, 903 F.Supp. 889, 894 (D.Md. 1995), "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate ... a court can ... deny certification outright[.]" *See Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (citing *Purdham,*, 629 F. Supp. 2d at 547; *see also Ting You v. Grand China Buffet &*

---

[3] Plaintiff's counsel was likewise informed of this significant fact on December 6, 2021. *See* Ex. E (Letter dated December 6, 2021). Despite this, Plaintiff has neglected to amend her Complaint.
[4] Since performing that initial calculation, Defendants have determined that the correct amount of hours is actually 497.76 hours for a total of $3,625.57.
[5] *See* Ex. F (Letter dated January 7, 2022).

*Grill, Inc.*, No. 1:17CV42, 2018 WL 1352174, at *2 (N.D. W.Va. Mar. 15, 2018) (stating that the named plaintiff must demonstrate some sort of "factual nexus" that connects his claims to the other putative plaintiffs as victims of an unlawful practice). Here, Plaintiff has wholly failed to present sufficient facts to meet the minimum threshold to establish commonality among the proposed class.

### 1. *Plaintiff's Declaration Does Not Establish the Basis of Her Personal Knowledge of the Defendants' Alleged Common Policy or Plan*.

The court should exercise its discretion to deny Plaintiff's request as Plaintiff has not presented facts that show Defendants engaged in a common unlawful pay practice with regard to members of the proposed class, or that a similarly situated class exists, beyond her mere speculations.

In her declaration, Plaintiff merely "strongly suspect[s]" that Defendants assign clients to certain Regions "to avoid paying overtime compensation for Home Care Workers who work many hours in the same workweek for clients in multiple Regions." Larson Decl. (ECF No. 13-3) at ¶ 13. Likewise, Monique Lassiter's ("Ms. Lassiter") Declaration provides the same type of conclusory allegations. *See* Declaration of Monique Lassiter ("Lassiter Decl.") (ECF No. 13-4) at ¶ 5. These assertions are too vague to support conditional certification and are insufficient to show Defendants engaged in a common unlawful practice regarding members of the proposed class.[6]

Moreover, Plaintiff does not claim to have personal knowledge of or even attempt to address the job duties of the various types of Home Care Workers, beyond stating what her own job duties entailed. *See* Larson Decl. (ECF No. 13-3) at ¶ 7. Plaintiff's absence of personal knowledge of GuardianLight's employment practices for its Home Care Workers, and of True

---

[6] It is notable that neither Ms. Lassiter nor Ms. Ailor have elected to join the lawsuit.

7

Select's employment practices at its Manassas, Vienna, Charlottesville, or Fairfax locations, renders her declaration an inappropriate foundation on which to conditionally certify a class. *See H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (denying the plaintiffs' request for court-facilitated notice because the only evidence of similarly situated class members consisted of conclusory affidavits stating the individuals' beliefs that others had been subjected to similar discrimination).

As evidenced by the declarations of other employees of True Select and GuardianLight, Defendants do not have a practice of failing to pay employees overtime compensation. Ex. A, Ghanbari Decl. at ¶¶ 29, 33-34; Ex. D, Lopez Decl. at ¶ 7. Rather, Defendants regularly pay overtime for all workweeks in which Home Care Workers work more than 40 hours for either one of the entities. Ex. A, Ghanbari Decl. at ¶¶ 29, 33-34; Ex. D, Lopez Decl. at ¶ 7.

### 2. *Plaintiff's Purported Class Lacks Common Work Schedules or Duties*.

Plaintiff has not proffered sufficient facts to obtain approval to proceed as a class showing the proposed class members are similarly situated. District courts in the Fourth Circuit have held that determining whether employees are "similarly situated" is a very fact-specific inquiry, but often requires plaintiffs to raise similar legal issues as to the purported violation and have similar factual settings with respect to their jobs. *Stone v. SRA Int' l, Inc.*, No. 2:14cv209, 2014 WL 5410628, at \*2 (E.D. Va. Oct. 22, 2014). Courts have also considered whether individuals are from a "manageably similar factual setting," and if their inclusion in the class would render litigation "bogged down by individual differences among class members." *See id.* at \*8. Courts can consider geography, similarity of job duties, and evidence of dissimilarities when considering whether to limit a class. *See id*. at 8-9 (denying nationwide class certification because of numerous work locations across several states involving over one hundred individuals).

Plaintiff has identified the categories in her definition of the class at issue in this case as "Caregivers, Home Health Aides, Certified Nursing Assistants, Care Coordinators, Companion Care, and Personal Case [sic] Assistants". *See* Compl. (ECF No. 1) at ¶¶ 8-9. In Plaintiff's Memorandum in Support of her Motion, Plaintiff asserts that courts have found it appropriate to conditionally certify classes of "home care nurses and similar employees based on FLSA overtime violations." Mem. of Law in Supp. Pl.'s Mot. (ECF No. 14) at 8. However, Plaintiff fails to acknowledge that the proposed class encompasses several different categories of Home Care Workers, including those who provide health-based care services (*i.e.*, Caregivers, Home Health Aides, Certified Nursing Assistants, Care Coordinators, and Personal Case [sic] Assistants), and those who, like Plaintiff, only provided companion-based services, which depart from Plaintiff's cited cases.

Here, the Home Care Workers differ significantly in terms of the type of work performed, skill set/training, licensing required, how they are compensated, and when they perform work. Ex. A, Ghanbari Decl. at ¶ 15. For example, live-in Home Care Workers (of which there are only a few) generally work a five-day schedule and are compensated using a daily flat rate. *Id.* at ¶ 16. Hourly Home Care Workers on the other hand, work varying schedules on an as needed basis, for different clients, at different locations. *Id.*; Ex. B, Stevens Decl. at ¶ 8; Ex. C, Bowman Decl. at ¶ 7. Further, True Select operates out of four locations, and thus, many potential members of the class do not work in the same locations. Ex. A, Ghanbari Decl. at ¶ 9; Ex. B, Stevens Decl. at ¶ 2; Ex. D, Lopez Decl. at ¶ 2. Additionally, many purported class members have no relevance to this FLSA collective action as they worked fewer than 40 hours per week. Ex. A, Ghanbari Decl. at ¶ 17. *See Andrade v. Aerotek, Inc.*, CBB-08-2668, 2009 WL 2757099 (D. Md. Aug. 26, 2009)

(denying conditional certification to class of recruiters and recruiting managers on grounds their responsibilities, authority and client contact differed too much for them to be similarly situated).

### 3. Plaintiff's Retaliation Claim (Count III) Further Renders the Potential Plaintiffs Not Similarly Situated.

The presence of Plaintiff's claim for retaliation further renders the potential plaintiffs not similarly situated because the issues litigated would not be central to all plaintiffs and necessitates specific and unique factual and legal analysis. This claim will require factual analysis of the termination of Plaintiff's employment, her job performance, and any complaints she made during her employment concerning her wages, as well as related issues. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (recognizing that causes of action for retaliation "depend upon the particular circumstances" of the claim). This claim will also require an analysis of how Plaintiff was treated by the Companies as compared to other employees to determine whether any adverse actions constitute unlawful retaliation. *Id.* Accordingly, this claim will predominate the factual issues at any trial of this matter.

Ultimately, too many individualized issues exist in Plaintiff's proposed class of plaintiffs to make a collective action practical or manageable. As Plaintiff has failed to carry her burden to show that her claims and Defendants' defenses are subject to common proof, proceeding as a collective action would prejudice the Defendants' ability to present defenses and/or would require mini trials for each of the opt-in plaintiffs. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 442 (5th Cir. 2021) (stating that where opt-in member's employment settings are disparate, a collective action can simply "devolve into a cacophony of individual actions.")

Despite this, Plaintiff has continued to pursue certification of the FLSA case, even though Defendants have repeatedly put Plaintiff on notice regarding the issues surrounding the proposed class, *i.e.*, that Defendants do not have a regular practice of failing to pay employees overtime

compensation; Defendants have already offered Plaintiff full recovery under the FLSA and VOWA and thus, Plaintiff is not a proper representative of the class; and members of the Home Care Worker class are not similarly situated. Based on the unique facts and circumstances of this case, the court should exercise its discretion to deny Plaintiff's request.

### C. Alternatively, if Plaintiff's Motion is Granted, Plaintiff's Proposed Class, Notice and Proposed Order Should be Limited.

#### 1. *The Time Frame and Geography of the Class Should be Limited.*

If the court determines that conditional certification is appropriate, the class should be limited. Plaintiff has offered no basis to establish her personal knowledge (or the personal knowledge of Ms. Ailor or Ms. Lassiter) as to any time frame prior to November 2020. According to their declarations, Plaintiff and Ms. Ailor worked for the entities beginning in March 2021. *See* Larson Decl. (ECF No.13-3) at ¶ 2; Declaration of Katherine Ailor (ECF No.13-5) at ¶ 1. Likewise, Ms. Lassiter did not begin working for Defendants until November 2020. *See* Lassiter Decl. (ECF No. 13-4) at ¶ 1. Accordingly, the time period for the proposed class should be limited to no earlier than November 2020. Further, nowhere in their declarations do Plaintiff, Ms. Ailor, or Ms. Lassiter claim to have personal knowledge of True Select's practices at its Manassas, Vienna, Charlottesville, or Fairfax locations. Accordingly, this Court should limit conditional certification of the FLSA class to Home Care Workers that perform services in the Winchester area.

#### 2. *Plaintiff's Notice of Collective Action Should be Amended.*

Whether or not, the court declines to limit the class, Defendants request that the language in the Proposed Order be clarified with regard to when the three-year time period commences. District courts have broad discretion regarding the "details" of the notice sent to potential opt-in plaintiffs. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574–75 (D. Md. 2012).

11

Specifically, Plaintiff is requesting certification of the class during the past three years preceding the institution of this action. Mem. of Law in Supp. Pl.'s Mot. (ECF No. 14) at 1. Under the FLSA, however, a complaint must be filed "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *See* 29 U.S.C. § 255(a).

As noted in Plaintiff's Memorandum in Support of her Motion, while an FLSA action is generally considered commenced on the date the complaint is filed, an opt-in claim in a collective action is *not commenced* in a collective action until the date that a written consent to join is filed with the court. *See* 29 U.S.C. § 256. As such, the purported class should only cover workers who were engaged during the three years prior to the date of the *issuance of the notice*. That is, this lawsuit was commenced on November 3, 2021, but any notice would not issue earlier than February 2022, at the very earliest. The potentially relevant class of workers, if any, are those who worked within three years of a prompt return and filing of the notice forms in February 2022, which should be clarified on the Proposed Court Order. *See* Proposed Order (ECF No. 13-1). This revision to the Court Order will prevent potential opt-ins from needlessly filing consents for events that occurred more than three years after their last engagement where their causes of action are barred by the statute of limitations.

Additionally, the time period to return and file the notices should be reasonably limited to 45 days after mailing. This is consistent with precedent in the Fourth Circuit. *See, e.g.*, *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 373 (N.D. W.Va. 2012) ("courts in this circuit routinely find that an opt-in period between 30–60 days is appropriate"). Moreover, only a limited number of potential plaintiffs exist in this case and there is no need for an extended period to

manage this process. Defendants, therefore, request a forty-five (45) day period for return and filing of the notice form with the court.

Lastly, Defendants requests that the notice be amended to advise potential plaintiffs that Defendants are also represented by counsel and plaintiffs may contact Defendants' counsel if they have any questions or desire any additional information about the lawsuit. Accordingly, the notice should be amended to inform potential opt-in plaintiffs that they may contact Defendants' counsel at the following address or email address: Steven W. Ray, Isler Dare, P.C., 1945 Old Gallows Road, Suite 650, Tysons Corner, Vienna, Virginia 22182, sray@islerdare.com.

### 3. *Plaintiff's Proposed Order Should be Amended.*

Lastly, Plaintiff's Proposed Order authorizes Plaintiff's counsel to send "reminder notices by first-class mail, electronic mail and text message to all potential members of the FLSA Class who have not yet responded to notice within thirty (30) days of the first issuance of notice." Proposed Order (ECF No. 13-1) at ¶ 5. This request should be rejected as "numerous district courts around the country have found that reminder notices have a tendency to both stir up litigation … and inappropriately encourage putative plaintiffs' to join the suit." *Byard v. Verizon West Virginia*, 287 F.R.D. 365, 373 (N.D. W.Va. 2012); *O'Quinn v. TransCanada USA Services, Inc*., 469 F. Supp. 3d 591 (S.D. W.Va. 2020) (holding that sending reminder notices to all putative class members in FLSA collective action was unnecessary and inappropriate). Accordingly, Defendants request that the Court amend Plaintiff's Proposed Order to remove this language.

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the court deny Plaintiff's Motion for Conditional Certification. Alternatively, if the Motion is granted, Defendants requests that: (1) the court limit Plaintiff's proposed class as set forth in Section III.C.1

13

of this Opposition; and (2) amend Plaintiff's Proposed Order and Notice of Collective Action as set forth in Section III.C.2-3 of this Opposition, and/or require Plaintiff's counsel to consult with counsel for Defendants concerning the language of the Proposed Order and Notice of Collective Action.

Dated: January 18, 2022                               Respectfully submitted,

                                                /s/ *Steven W. Ray*
                                      Steven W. Ray
                                      Virginia Bar No. 32320
                                      ISLER DARE, P.C.
                                      1945 Old Gallows Road, Suite 650
                                      Vienna, Virginia 22182
                                      Phone: (703) 748-2690
                                      Facsimile: (703) 748-2695
                                      sray@islerdare.com
                                      *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

>James E. Goodley, Esq.
>Goodley McCarthy LLC
>1650 Market Street, Suite 3600
>Philadelphia, Pennsylvania 19103
>james@gmlaborlaw.com
>
>*Counsel for Plaintiff*

>Respectfully submitted,
>
>_____/s/ *Steven W. Ray*_____
>Steven W. Ray
>Virginia Bar No. 32320
>ISLER DARE, P.C.
>1945 Old Gallows Road, Suite 650
>Vienna, Virginia 22182
>Phone: (703) 748-2690
>Facsimile: (703) 748-2695
>sray@islerdare.com
>*Counsel for Defendants*