# EXHIBIT E



Steven W. Ray
Admitted VA DC MD CA

Edward Lee Isler
Admitted VA DC

Michelle B. Radcliffe
Admitted VA DC MD

Andrea I. O'Brien
Admitted VA DC MD

Steven D. Brown
Admitted VA CT FL NC

Lori H. Turner
Admitted VA DC MD

Vi D. Nguyen
Admitted VA DC CA

Jeanne E. Floyd
Admitted VA

Micah E. Ticatch
Admitted VA DC CA MD

Alison D. Kewer
Admitted VA GA

Amy E. Smith
Admitted VA DC GA FL

Ashley F. Hedge
Admitted VA DC MD

Lindsey A. Strachan
Admitted VA

Ramana R. Briggs
Admitted VA DC

Whitney E. Nelson
Admitted VA

R. Mark Dare (Ret.)
Wayne A. Schrader (Ret.)
W. Michael Holm (Ret.)

1945 Old Gallows Road
Suite 650
Tysons Corner
Vienna, Virginia 22182
703.748.2690
703.748.2695 (fax)

1111 East Main Street
Suite 1605
Richmond, Virginia 23219
804.489.5500
804.234.8234 (fax)

www.islerdare.com

December 6, 2021

**Via Email (james@gmlaborlaw.com)**
James E. Goodley, Esquire
Ryan P. McCarthy, Esquire
Goodley McCarthy LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
ryan@gmlaborlaw.com

Re:     *Joyce Larson v. True Select LLC et al.* — Civil Action No. 5:21-cv-00077

Dear Counsel,

I appreciated the opportunity to speak with you recently about the above-referenced matter. The purpose of this letter is to provide you with an overview of our clients' position, which I believe will lead you to the conclusion that there is no support for Ms. Larson's individual claims and the class and collective action alleged in the complaint against True Select LLC d/b/a FirstLight Homecare ("True Select") and GuardianLight of Northwestern VA Inc. d/b/a FirstLight Homecare ("GuardianLight") (collectively, "Companies").

As you know, Ms. Larson's complaint alleges violations of the Fair Labor Standards Act ("FLSA") and the Virginia Overtime Wage Act ("VOWA"), including multiple acts of retaliation. This collective action sought by Ms. Larson is improper because: (1) Ms. Larson has failed to offer sufficient factual evidence to support that she is a proper representative of the class; (2) Ms. Larson's claim for retaliation will require significant and individual factual and legal analysis that is separate and distinct from the wage and hour claims; and (3) the Companies have already paid all alleged overtime payments to Ms. Larson and thus, she has no viable claim for damages. Further, as shown below, contrary to the allegations in the complaint, the Companies do not have a practice of failing to pay employees overtime compensation.

Mr. James Goodley, Esquire
December 6, 2021
Page 2



### A. Background Facts

GuardianLight and True Select are two related, but separate entities. Notably, GuardianLight operates out of Winchester, Virginia and the office is managed by Wendy Stanton ("Ms. Stanton"), Office Manager. Ms. Stanton manages and directs the staff in Winchester, and she managed Ms. Larson during the period she was employed as an Office Assistant. True Select, on the other hand, operates out of Charlottesville, Fairfax, and Vienna, Virginia and each location is similarly managed by its local Office Manager. Kendra Ghanbari ("Ms. Ghanbari") owns True Select and is a majority owner of GuardianLight, although she does not directly manage any Home Care Workers at any of the locations.

Ms. Larson was employed by GuardianLight in the role of Office Assistant from March 1, 2021 until September 2021. As an Office Assistant, she was scheduled to work 9:00am to 5:00pm, Monday through Friday and performed duties primarily administrative in nature. For example, her duties included answering phones; hiring new caregivers; maintaining employees' files (including licensing information); performing background checks and providing employees employment paperwork. Notably, although she had a set schedule, Ms. Larson did not work consistent hours. For instance, she was often witnessed leaving her position early, around 3:00pm or 4:00pm. Ms. Larson was also often witnessed leaving the office in the middle of the working day to conduct personal errands without clocking out, and on at least one occasion, Ms. Larson left the office in the middle of the day to go to the movies. *See* **Exhibit A** (Text messages between W. Stanton and J. Larson dated June 17, 2021). Despite this, Ms. Larson was paid an hourly rate of $16.00 for her services (or the equivalent salary basis for a few pay periods) for the full 40-hour work week, via direct deposit.

In addition, Ms. Larson was employed by True Select as a Home Care Worker on the weekends from March 2021 through November 1, 2021. As a Home Care Worker, Ms. Larson primarily provided companion services to one of True Select's clients, Louise Fox ("Ms. Fox"), on a set weekend schedule. In Ms. Larson's role she was either paid a fixed rate of $180.00, when she worked as a live-in companion, or she was paid an hourly rate of $13.00, via paycheck. Notably, at the time of her hire, Ms. Larson misrepresented to True Select that she had a CNA license, when in fact, True Select later discovered that her license had expired several years prior. Ms. Larson confirmed this information when her supervisor asked her about her license, by text message, after she resigned from her Office Assistant position. This was particularly troubling to True Select considering that the first case Ms. Larson was placed in was a hospice case and it was communicated to Ms. Larson that a CNA license skill set would be needed. Additionally, True Select and GuardianLight pay their unlicensed Home Care Workers an hourly rate of $11.00, rather than $13.00 an hour, and requires such employees to take a Personal Care Aid Test. Had Ms. Larson been forthcoming with this information, she would have been paid at the lower rate and would have been required to take a Personal Care Aid Test. Considering that Ms. Larson was in charge of maintaining employee files in her position as Office Assistant, including licensing information, she was well aware of these requirements.

Mr. James Goodley, Esquire
December 6, 2021
Page 3



**B.  Class Membership**

> *i.   Ms. Larson is not a proper representative of the Home Care Worker Class.*

As you know, in order to bring a collective action under the Fair Labor Standards Act ("FLSA"), it is required that plaintiffs be similarly situated and that they affirmatively opt in to the class by giving written consent filed with the court.  *See, e.g.*, *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 758 (4th Cir. 2011).  Given that this case revolves around the Companies' alleged failure to pay overtime compensation to its Home Care Workers (including Caregivers, Home Health Aides, Certified Nursing Assistants, Care Coordinators, Companion Care and Personal Case Assistants), it is imperative that some evidence is shown that potential opt-in members would actually be similarly situated to Ms. Larson.

District courts in the Fourth Circuit have held that determining whether employees are "similarly situated" is a very fact-specific inquiry, but often requires plaintiffs to raise similar legal issues as to the purported violation and have similar factual settings with respect to their jobs.  *See Stacy v. Jennmar Corp. of Virginia, Inc.*, W.D. Va. No. 1:21CV00015, 2021 WL 4787278, at *2 (W.D. Va. Oct. 14, 2021) (citing *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011)).  Courts have also considered whether individuals are from a "manageably similar factual setting," and if their inclusion in the class would render litigation "bogged down by individual differences among class members."  *See Stone v. SRA Int'l, Inc.*, E.D. Va. No. 2:14CV209, 2014 WL 5410628, at *8 (E.D. Va. Oct. 22, 2014) (quoting *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008).  Courts can consider geography, similarity of job duties, and supplied evidence of similarities when considering whether to limit a class. *See id.* at 8-9.  In cases where conditional class certification has been granted, plaintiffs alleged similar job descriptions, duties, and nature of work, in order to prove they are similarly situated to other potential class members.  *See Stone v. SRA Int'l, Inc.*, E.D. Va. No. 2:14CV209, 2014 WL 5410628; *Houston v. URS Corp.*, 591 F. Supp. 2d 827.

In this case, there are numerous dissimilarities between the factual setting surrounding Ms. Larson's employment with GuardianLight and True Select and other potential members of the Home Care Workers class ("Class").  First, Ms. Larson is one of only a few individuals who performed work for both GuardianLight and True Select.  Moreover, Ms. Larson, as an Office Assistant for GuardianLight, performed duties which were administrative in nature, unlike other potential members of the Class.  Additionally, most Home Care Workers worked varying shifts or performed services for various clients.  Aside from one other occasion, Ms. Larson only provided services for one client, Ms. Fox, and declined to provide services to various other clients.  She also worked on a set schedule  to work almost exclusively on weekends, unlike other members of the Class who worked on an as needed basis.  Further, despite that Ms. Larson misrepresented that she was licensed, she also does not have an active CNA license, or a PCA certificate like most other members of the Class.

Further, True Select operates out of three locations, and thus, many potential members of the Class do not work in the same locations.  Moreover, the Class of Home Care Workers differ

Mr. James Goodley, Esquire
December 6, 2021
Page 4



significantly in terms of the type of work performed, skill set/training, licensing required, how they are compensated, and when they perform work. For example, live-in Home Care Workers (of which there are only a few) generally work a five-day schedule and are compensated using a daily flat rate. Hourly Home Care Workers on the other hand, work varying schedules on an as needed basis, for varying clients, at different locations. Conversely, office managers and office assistants are paid on a salary basis and are engaged in higher level work, such as handling patient case management and recruiting and training staff. Considering the foregoing, Ms. Larson is simply not a proper class representative because her claims are not typical of the Class as a whole.

### ii. Mr. Larson has pleaded claims particular to her.

The presence of Ms. Larson's claim for Retaliation (Count III) further renders the potential plaintiffs not similarly situated because the issues litigated would not be central to all plaintiffs and necessitates specific and unique factual and legal analysis. In particular, this claim will require factual analysis of the termination of her employment, her job performance, and any complaints she made during her employment concerning her wages, as well as related issues. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 79 (2006) (recognizing that causes of action for retaliation "depend upon the particular circumstances" of the claim). This claim will also require an analysis of how Ms. Larson was treated by the Companies as compared to other employees to determine whether any adverse actions constitute unlawful retaliation. *Id.* Accordingly, this claim will predominate the factual issues at any trial of this matter. To the extent Ms. Larson is also seeking to bring this claim on behalf of other members of the Class, an analysis of the retaliation claims of such other plaintiffs would also require the same specific and unique factual and legal analysis. Lastly, there is no basis for her retaliation claim based on the facts discussed below.

### iii. The Companies have already paid all alleged overtime to Ms. Larson and thus, she has no viable claim for damages.

As detailed below, contrary to the allegations in the complaint, Ms. Larson received all alleged overtime compensation she is entitled to, despite the fact that she refused two checks offered to her. Within her role as a Home Care Worker for True Select, Ms. Larson brought a concern to her supervisor, Ms. Stanton, on October 8, 2021, stating that she believed that she was paid the wrong rate for some of the hours she worked. On the same day, her supervisor informed payroll that there was a perceived pay rate discrepancy and asked for them to review her records. After the payroll department reviewed the matter, Ms. Larson was notified on October 27, 2021, that the payroll department would be issuing her checks for the difference between what she was paid and any overtime she was entitled to. On October 29, 2021, Ms. Stanton and Ms. Ghanbari scheduled a meeting with Ms. Larson to provide her these checks and to attempt to further understand Ms. Larson's concerns regarding her pay, to the extent she had any further concerns. Ms. Larson refused to attend the meeting on October 29, 2021, stating that she had "pre-arranged doctors' appointments." As a result, the meeting was scheduled on the following Monday, November 1, 2021, at the Winchester office. During this meeting, Ms. Larson refused to discuss any grievances or concerns regarding her pay and refused to take the checks which were offered to her at the beginning of the meeting. *See* **Exhibits B & C** (Paycheck for 09/20/2021 - 10/3/2021

Mr. James Goodley, Esquire
December 6, 2021
Page 5



period totaling $108.05 &  Paycheck for 10/4/2021 - 10/17/2021 totaling $48.02).  She then requested another copy of the employee handbook, which was given to her in a folder with the checks, after which Ms. Larson stormed out of the office.  Subsequent to this, Ms. Larson returned to the office building and slid the checks under the front door of the office.

After this incident, True Select once again reviewed Ms. Larson's payroll records to see if there were any discrepancies.  As True Select and GuardianLight had compensated her for all overtime she was owed for each entity (or at least tried to, considering Ms. Larson refused two checks), our clients came to the conclusion that Ms. Larson likely believed that she was entitled to overtime for all hours worked across both entities.  While our clients maintain that Ms. Larson was properly compensated, our clients decided to pay Ms. Larson any alleged overtime owned across both entities to address any remaining concerns Ms. Larson may have had.  Accordingly, in an effort to assist you in demonstrating to your client that she properly compensated for hours worked, I have included, as **Exhibit D**, a spreadsheet of her payroll records.  We are also providing you with a copy of all of her time records for her home care position and paystubs for both entities to allow you to confirm the number of overtime hours to which she alleges she is entitled to back pay for.  These documents are being provided by email using our secure file-sharing portal ShareFile (you will receive an email directly from ShareFile with a link that will allow you to view the documents).

For ease of calculation, our clients treated all of the time Ms. Larson performed home care for TrueSelect as eligible for overtime for a total of 681.46 hours and paid her half time rate on those hours (i.e., $6.50) for a total of $4,429.56, less her withholdings, for a total of $3,058.70.  As you will see when you review these paystubs, the words "Retro Back Pay" appear under the "Earnings and Hours" box of Ms. Larson's final paystub from GuardianLight.  As you can see on this November 8, 2021 paystub, which was direct deposited into Ms. Larson's account, that is precisely the amount that she was paid in Retro Back Pay.  *See* **Exhibit E**.

As you can see from the enclosed spreadsheet, based on Ms. Larson's assertion that the hours work for both entities must be combined, she was entitled to overtime for 497.76 hours.  Thus, our client overestimated the number of hours Ms. Larson worked as part of their calculations, by 182 hours.

With regard to the amount of overtime due, as seen in the spreadsheet, the calculation method set out in the spreadsheet follows applicable FLSA regulations which as you know, require employers to pay employees at one and one-half times their regular rate for all hours worked over forty in a workweek.  29 U.S.C. § 207(a)(1).  The FLSA regulations describe the "regular rate" "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed—an 'actual fact.'"  29 C.F.R. § 778.108 (internal citations omitted).  Because Ms. Larson performed work at two different rates during the applicable workweeks, the blended rate is used to determine the regular rate in accordance with Department of Labor regulations 29 C.F.R. § 778.11.  She is then entitled to half time that regular rate times the number of overtime hours worked for any workweek.  We have thus calculated the half-time rate for each workweek in which Ms. Larson worked overtime for a total of $3,625.57. *See, e.g.*, *Zamora v. Enter. Rac of Maryland, LLC*, E.D. Va. No. 120CV00478LMBMSN, 2020 WL 7488200, at *1 (E.D. Va. Dec. 7, 2020), *aff'd*, 4th Cir. No. 20-2278, 2021 WL 4473395 (4th Cir. Sept. 30, 2021) (upholding the employer's calculation of the amount of overtime due on plaintiff's bonus compensation in

Mr. James Goodley, Esquire
December 6, 2021
Page 6



accordance with the FLSA overtime regulations).  This amount also offsets the two paychecks Ms. Larson refused on November 1, 2021, for the overtime hours she worked during the first workweek in October.  Thus, Ms. Larson has already been overpaid any and all alleged overtime pay owed.  Accordingly, to the extent Ms. Larson claims she is entitled to overtime for all hours worked across the two entities, she has already been made whole and has no viable claim for overtime under the FLSA.

In light of the foregoing, Ms. Larson's FLSA claim is not well grounded in fact and Ms. Larson is not a proper representative of the Home Care Worker Class.  As such, we will not agree to stipulate to the conditional certification or to a tolling agreement.  If you move forward with seeking certification, we will oppose the motion on the grounds set forth above.  Moreover, we expect Ms. Larson to dismiss her claims for unpaid overtime before our answer is due to be filed on January 5, 2022.  Should she fail to do so, and we are compelled to spend further legal fees on defending against her overtime claim, we will not hesitate to pursue all legal remedies available.

If you would like to discuss the foregoing and a possible resolution of this matter, please contact me by no later than Wednesday, December 15, 2021.  I look forward to hearing from you.

Very truly yours,

Steven W. Ray
Counsel for Defendants

Enclosures a/s

# EXHIBIT A



Joyce >

Clock me out please.
Thank you

Wed, Jun 16, 7:32 AM

Goodmorning ☕☕
I received an email from
the potential client in
Middleburg they're going
to delay our meeting. So
no reason to rush to the
office this morning.

Ok

Thu, Jun 17, 12:39 PM

Hey I'm heading into the



Joyce ›

Thu, Jun 17, 12:39 PM

Hey I'm heading into the theater now

Sat, Jun 19, 8:49 AM



# EXHIBIT B

FirstLight HomeCare
3343 Valley Pike
Unit #700
Winchester, VA 22602



Joyce Larson
P.O.Box #2313
Winchester, VA 22601

---

| Employee Pay Stub | Check number: 8072 | | | Pay Period: 09/20/2021 - 10/03/2021 | Pay Date: 11/01/2021 |
|---|---|---|---|---|---|

**Employee**                                                           **SSN**

Joyce Larson, P.O.Box #2313, Winchester, VA 22601

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Companion Hourly OT | 18.00 | 6.50 | 117.00 | 117.00 |
| Companion Hourly | | | | 4,019.81 |
| Companion Hourly Holiday | | | | 234.00 |
| Personal Care Hourly | | | | 4,176.25 |
| Live In PC | | | | 360.00 |
| | 18.00 | | 117.00 | 8,907.06 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | 0.00 | -614.00 |
| Social Security Employee | | | -7.26 | -552.24 |
| Medicare Employee | | | -1.69 | -129.15 |
| VA - Withholding | | | 0.00 | -199.00 |
| | | | -8.95 | -1,494.39 |

| Net Pay | | | 108.05 | 7,412.67 |
|---|---|---|---|---|

**Powered by Intuit Payroll**

# EXHIBIT C

FirstLight HomeCare
3343 Valley Pike
Unit #700
Winchester, VA 22602



Joyce Larson
P.O.Box #2313
Winchester, VA 22601

---

| Employee Pay Stub | | Check number: 8073 | | | Pay Period: 10/04/2021 - 10/17/2021 | | Pay Date: 11/02/2021 |
|---|---|---|---|---|---|---|---|

**Employee**                                                                    SSN

Joyce Larson, P.O.Box #2313, Winchester, VA 22601

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Personal Care Hourly OT | 8.00 | 6.50 | 52.00 | 52.00 |
| Companion Hourly | | | | 4,019.81 |
| Companion Hourly OT | | | | 117.00 |
| Companion Hourly Holiday | | | | 234.00 |
| Personal Care Hourly | | | | 4,176.25 |
| Live In PC | | | | 360.00 |
| | 8.00 | | 52.00 | 8,959.06 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | 0.00 | -614.00 |
| Social Security Employee | | | -3.22 | -555.46 |
| Medicare Employee | | | -0.76 | -129.91 |
| VA - Withholding | | | 0.00 | -199.00 |
| | | | -3.98 | -1,498.37 |

| Net Pay | | | 48.02 | 7,460.69 |
|---|---|---|---|---|

Powered by Intuit Payroll

# EXHIBIT D

**True Select, LLC and Guardian Light LLC.**
**LARSON, JOYCE**
**Payroll & Backpay Overtime Due**
**2/22/2021 - 10/23/2021**

| (A) Payroll Period | | Time Worked | | | | | (G) Hourly Rate for True Select | Amounts Actually Paid | | | | | Overtime Due | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (A) Payroll Period | Weekly | (B) Total Hours Worked for True Select | (C) Total Hours Worked for Guardian Light | (D) Total Hours Worked (B+C) | (E) Overtime Hours Worked (D)-40 (but not less than 0) | (F) Regular Hours Worked (D)-(E) (but not less than 0) | (G) Hourly Rate for True Select | (H) Hourly Rate for Guardian Light | (I) Amount Paid by True Select | (J) Amount Paid by Guardian Light | (K) Holiday and Bonus Paid | (L) Total Amount Paid | (M) Blended Regular Rate (L/D) | (N) Overtime Earned (Mx.5xE) |
| 3/1/2021 | 3/7/2021 | 0.00 | 38.50 | 38.50 | 0.00 | 40.00 | n/a | Salary | n/a | $616.00 | | $308.00 | $8.00 | $0.00 |
| 3/8/2021 | 3/14/2021 | 48.00 | 32.00 | 80.00 | 40.00 | 40.00 | Flat $180 | $16.00 | $180.00 | $512.00 | | $692.00 | $8.65 | $173.00 |
| 3/15/2021 | 3/21/2021 | 6.00 | 32.00 | 38.00 | 0.00 | 40.00 | Flat $180 | $16.00 | $180.00 | $512.00 | | $692.00 | $18.21 | $0.00 |
| 3/22/2021 | 3/29/2021 | 0.00 | 46.00 | 46.00 | 6.00 | 40.00 | n/a | $16.00 | n/a | $730.00 | | $730.00 | $15.87 | $47.61 |
| 3/30/2021 | 4/4/2021 | 0.00 | 46.00 | 46.00 | 6.00 | 40.00 | n/a | $16.00 | n/a | $730.00 | | $730.00 | $15.87 | $47.61 |
| 4/5/2021 | 4/11/2021 | 0.00 | 40.00 | 40.00 | 0.00 | 40.00 | $13.00 | Salary | $0.00 | $615.50 | | $615.50 | $15.39 | $0.00 |
| 4/12/2021 | 4/18/2021 | 12.00 | 40.00 | 52.00 | 12.00 | 40.00 | $13.00 | Salary | $156.00 | $615.50 | | $771.50 | $14.84 | $89.02 |
| 4/19/2021 | 4/25/2021 | 33.50 | 40.00 | 73.50 | 33.50 | 40.00 | $13.00 | $16.00 | $435.50 | $640.00 | $50.00 | $1,125.50 | $15.31 | $256.49 |
| 4/26/2021 | 5/2/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |
| 5/3/2021 | 5/9/2021 | 26.83 | 40.00 | 66.83 | 26.83 | 40.00 | $13.00 | Salary | $348.79 | $640.00 | | $988.79 | $14.80 | $198.48 |
| 5/10/2021 | 5/16/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | Salary | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |
| 5/17/2021 | 5/23/2021 | 36.00 | 40.00 | 76.00 | 36.00 | 40.00 | $13.00 | $16.00 | $468.00 | $640.00 | $78.00 | $1,186.00 | $15.61 | $280.89 |
| 5/24/2021 | 5/30/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | $78.00 | $1,030.00 | $16.09 | $193.13 |
| 5/31/2021 | 6/6/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |
| 6/7/2021 | 6/13/2021 | 6.88 | 40.00 | 46.88 | 6.88 | 40.00 | $13.00 | $16.00 | $89.44 | $640.00 | | $729.44 | $15.56 | $53.53 |
| 6/14/2021 | 6/20/2021 | 0.00 | 40.00 | 40.00 | 0.00 | 40.00 | $13.00 | $16.00 | $0.00 | $640.00 | | $640.00 | $16.00 | $0.00 |
| 6/21/2021 | 6/27/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |
| 6/28/2021 | 7/4/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |
| 7/5/2021 | 7/11/2021 | 0.00 | 40.00 | 40.00 | 0.00 | 40.00 | $13.00 | $16.00 | $0.00 | $640.00 | | $640.00 | $16.00 | $0.00 |
| 7/12/2021 | 7/18/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | $39.00 | $991.00 | $15.48 | $185.81 |
| 7/19/2021 | 7/25/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | $39.00 | $991.00 | $15.48 | $185.81 |
| 7/26/2021 | 8/1/2021 | 12.00 | 40.00 | 52.00 | 12.00 | 40.00 | $13.00 | $16.00 | $156.00 | $640.00 | | $796.00 | $15.31 | $91.85 |
| 8/2/2021 | 8/8/2021 | 16.00 | 40.00 | 56.00 | 16.00 | 40.00 | $13.00 | $16.00 | $208.00 | $640.00 | | $848.00 | $15.14 | $121.14 |
| 8/9/2021 | 8/15/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |
| 8/16/2021 | 8/22/2021 | 0.00 | 40.00 | 40.00 | 0.00 | 40.00 | $13.00 | $16.00 | $0.00 | $640.00 | | $640.00 | $16.00 | $0.00 |
| 8/23/2021 | 8/29/2021 | 16.75 | 40.00 | 56.75 | 16.75 | 40.00 | $13.00 | $16.00 | $217.75 | $640.00 | | $857.75 | $15.11 | $126.58 |
| 8/30/2021 | 9/5/2021 | 24.00 | 40.00 | 64.00 | 24.00 | 40.00 | $13.00 | $16.00 | $312.00 | $640.00 | | $952.00 | $14.88 | $178.50 |

| (A) Weekly Payroll Period | | (B) Total Hours Worked for True Select | (C) Total Hours Worked for Guardian Light | (D) Total Hours Worked (B+C) | (E) Overtime Hours Worked (D)-40 (but not less than 0) | (F) Regular Hours Worked (D)-(E) (but not less than 0) | (G) Hourly Rate for True Select | (H) Hourly Rate for Guardian Light | (I) Amount Paid by True Select | (J) Amount Paid by Guardian Light | (K) Holiday and Bonus Paid | (L) Total Amount Paid | (M) Blended Regular Rate (L/D) | (N) Overtime Earned (Mx.5xE) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0.00 | | | | $0.00 | | | | | |
| 9/6/2021 | 9/12/2021 | 36.50 | 28.65 | 65.15 | 25.15 | 40.00 | $13.00 | $16.00 | $474.50 | $460.00 | | $934.50 | $14.34 | $180.37 |
| 9/13/2021 | 9/19/2021 | 24.00 | 28.65 | 52.65 | 12.65 | 40.00 | $13.00 | $16.00 | $312.00 | $460.00 | | $772.00 | $14.66 | $92.74 |
| | | | | | 0.00 | | | | $0.00 | | | | | |
| 9/20/2021 | 9/26/2021 | 34.00 | 0.00 | 34.00 | 0.00 | 25.00 | $13.00 | n/a | $442.00 | $0.00 | | $442.00 | $13.00 | $0.00 |
| 9/27/2021 | 10/3/2021 | 37.00 | 0.00 | 37.00 | 0.00 | 25.00 | $13.00 | n/a | $481.00 | $0.00 | | $481.00 | $13.00 | $0.00 |
| | | | | | | | | | $0.00 | | | | | |
| 10/4/2021 | 10/10/2021 | 48.00 | 0.00 | 48.00 | 8.00 | 36.00 | $13.00 | n/a | $624.00 | $0.00 | | $624.00 | $13.00 | $52.00 |
| 10/11/2021 | 10/17/2021 | 24.00 | 0.00 | 24.00 | 0.00 | 36.00 | $13.00 | n/a | $312.00 | $0.00 | | $312.00 | $13.00 | $0.00 |
| | | | | | | | | | $0.00 | | | | | |
| 10/18/2021 | 10/24/2021 | 24.00 | 0.00 | 24.00 | 0.00 | 12.00 | $13.00 | n/a | $312.00 | $0.00 | | $312.00 | $13.00 | $0.00 |
| Totals: | | 681.46 | 1131.80 | 1813.26 | 497.76 | 1294.00 | | | $8,408.58 | $18,051.00 | $284.00 | $26,543.98 | | $3,625.57 |

# EXHIBIT E

FirstLight HomeCare
3343 Valley Pike
Unit #700
Winchester, VA 22602


Joyce Larson
P.O.Box #2313
Winchester, VA 22601


Direct Deposit

---

| Employee Pay Stub | Check number: DD5763 | | | | Pay Period: 10/18/2021 - 11/01/2021 | | Pay Date: 11/08/2021 |
|---|---|---|---|---|---|---|---|

**Employee**

Joyce Larson, P.O.Box #2313, Winchester, VA 22601

**SSN**

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Retro Back Pay | 681.47 | 6.50 | 4,429.56 | 4,429.56 |
| Companion Hourly | | | | 4,331.81 |
| Companion Hourly OT | | | | 117.00 |
| Companion Hourly Holiday | | | | 234.00 |
| Personal Care Hourly | | | | 4,176.25 |
| Personal Care Hourly OT | | | | 52.00 |
| Live In PC | | | | 360.00 |
| | 681.47 | | 4,429.56 | 13,700.62 |

| Direct Deposit | Amount |
|---|---|
| | 3,058.70 |

**Memo**

Direct Deposit

| Taxes | Current | YTD Amount |
|---|---|---|
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -797.00 | -1,427.00 |
| Social Security Employee | -274.63 | -849.44 |
| Medicare Employee | -64.23 | -198.66 |
| VA - Withholding | -235.00 | -437.00 |
| | -1,370.86 | -2,912.10 |
| **Net Pay** | **3,058.70** | **10,788.52** |

---

FirstLight HomeCare, 3343 Valley Pike, Unit #700, Winchester, VA 22602, True Select, LLC

Powered by **Intuit Payroll**