# EXHIBIT F



| | Steven W. Ray<br>Admitted VA DC MD CA | Micah E. Ticatch<br>Admitted VA DC CA MD |
|---|---|---|
| | Edward Lee Isler<br>Admitted VA DC | Alison D. Kewer<br>Admitted VA GA |
| 1945 Old Gallows Road<br>Suite 650<br>Tysons Corner<br>Vienna, Virginia 22182<br>703.748.2690<br>703.748.2695 (fax) | Michelle B. Radcliffe<br>Admitted VA DC MD | Amy E. Smith<br>Admitted VA DC GA FL |
| | Andrea I. O'Brien<br>Admitted VA DC MD | Ashley F. Hedge<br>Admitted VA DC MD |
| | Steven D. Brown<br>Admitted VA CT FL NC | Lindsey A. Strachan<br>Admitted VA |
| 1111 East Main Street<br>Suite 1605<br>Richmond, Virginia 23219<br>804.489.5500<br>804.234.8234 (fax) | Lori H. Turner<br>Admitted VA DC MD | Ramana R. Briggs<br>Admitted VA DC |
| | Vi D. Nguyen<br>Admitted VA DC CA | Whitney E. Nelson<br>Admitted VA |
| | Jeanne E. Floyd<br>Admitted VA | R. Mark Dare (Ret.)<br>Wayne A. Schrader (Ret.)<br>W. Michael Holm (Ret.) |
| www.islerdare.com | | |

January 7, 2022

**FOR SETTLEMENT PURPOSES ONLY**

<u>Via Email (james@gmlaborlaw.com)</u>
James E. Goodley, Esquire
Ryan P. McCarthy, Esquire
Goodley McCarthy LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
ryan@gmlaborlaw.com

     Re:    *Joyce Larson v. True Select LLC et al.* — Civil Action No. 5:21-cv-00077

Dear James,

    The purpose of this letter is to respond to your email of December 17, 2021 with respect to Ms. Larson's individual claims alleged in the complaint against True Select LLC d/b/a FirstLight Homecare ("True Select") and GuardianLight of Northwestern VA Inc. d/b/a FirstLight Homecare ("GuardianLight") (collectively, "Companies"). As laid out below, a resolution to this matter would be best for all parties involved. Accordingly, we believe that Ms. Larson's claims are ripe for settlement based on the modest amount of any potential damages and the comparatively large amount of attorneys' fees that will result from prolonged litigation.

    To that end, to settle her claims for unpaid overtime based on our calculations (Counts I and II of the Complaint), the Companies are willing to offer Ms. Larson the alleged liquidated damages she is owed ($3,625.57), offset by the balance of the overpayment already made to Ms. Larson ($803.99), for a total amount of $2,821.58 and your reasonable attorney's fees, in accordance with a court supervised settlement. Regarding Ms. Larson's retaliation claim Defendants are willing to offer two months of back pay, based on her average hours worked in the month prior to her resignation from True Select (*i.e.*, 131 hours during the month of October 2021), for a total amount of $3,406.00 (131 hours x 2 months x $13.00/hr.).

Mr. James Goodley, Esquire  
January 7, 2022  
Page 2



A. **The Companies' Offer of Full Recovery Resolves Ms. Larson's Overtime Claims under the FLSA and VOWA.**

With respect to Ms. Larson's overtime claims, if Ms. Larson's claims were to proceed to litigation, we are confident the court would exercise its discretion to deny an award of liquidated damages.[1] Nevertheless, my client is willing to tender full payment for the remaining liquidated damages allegedly owed to her,[2] in addition to an amount for your reasonable attorneys' fees. In doing so, her individual claims are mooted. *See*, *e.g.*, *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 642, 2019 WL 959598 (E.D. Va. 2019) (concluding that when an individual plaintiff receives complete relief for her claims, that plaintiff no longer has a live case or controversy).[3]

B. **Ms. Larson Cannot Establish a Prima Facie Case of Retaliation.**

Ms. Larson's retaliation claim is likewise weak for the reasons set forth below. As you know, a plaintiff asserting a claim of retaliation under the FLSA must show that: (1) she engaged in an activity protected by the FLSA; (2) she suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *See Schmidt v. Bartech Grp., Inc.*, 620 F. App'x 153, 155 (4th Cir. 2015).

First, to be considered statutorily protected activity, an oral complaint must provide fair notice to the employer that the employee believes the FLSA has been violated. *See Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 439 (4th Cir. 2012). That is, an employee complaint must have "some degree of formality" and must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* At no time prior to this lawsuit did Ms. Larson explain to the Companies that she believed she was entitled to overtime for all hours worked across both entities. Rather, on October 8, 2021, she stated only that she believed there was an error regarding her rate of pay, and True Select immediately investigated the issue and corrected the oversight.

Second, Ms. Larson's retaliation claim is factually flawed because Ms. Larson was not terminated. Rather, when True Select tried to meet with Ms. Larson on November 1, 2021 to discuss her concerns regarding her pay and to better understand her grievances, Ms. Larson: (1)

---

[1] "In its sound discretion, . . . a court may refuse to award liquidated damages if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Roy v. County of Lexington, South Carolina*, 141 F.3d 533 (4th Cir. 1998). While an employer may not "remain blissfully ignorant of FLSA requirements," the Fourth Circuit has affirmed the denial of liquidated damages where employers had a reasonable, if simplistic, understanding of the law; for example, where the employer simply relied on a motel trade publication for legal compliance issues. *See Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984). Even assuming your client's position regarding the calculation of her overtime pay is correct, my client nonetheless believed that it met all applicable requirements under the FLSA.

[2] As set out in my December 6, 2021, letter, Ms. Larson is already in receipt of Defendants' backpay payment (plus the overpayment made to Ms. Larson, which offsets a portion of the balance for liquidated damages).

[3] And, by extension, Defendants will oppose Plaintiff's pending Motion for Conditional Certification on the grounds it is mooted because Plaintiff is the sole representative of the alleged class.

Case 5:21-cv-00077-TTC   Document 16-6   Filed 01/18/22   Page 4 of 15   Pageid#: 149

Mr. James Goodley, Esquire
January 7, 2022
Page 3



refused to discuss any of her concerns with management; (2) refused to take the checks which were offered to her; and (3) stated that "you will hear from my lawyer" and stormed out of the office and never returned.

      Moreover, to the extent Ms. Larson asserts management reduced her work shifts from two days to one day her claim is likewise factually flawed.  As your client is well aware, Ms. Larson was not regularly scheduled to work two shifts a week for True Select.  Rather, during the weekend of September 25, 2021, Ms. Larson picked up an additional shift with Ms. Fox, the only client Ms. Larson provided services for, as another caregiver was on vacation.  The following week, Ms. Larson refused to relinquish this additional shift, claiming to her supervisor that the client only wanted her and wanted the other caregiver removed.  *See* **Exhibit A** (Text Messages Between W. Stanton and J. Larson dated 10/6/2021).  Ms. Larson's supervisor allowed Ms. Larson to work this shift for the next few weekends as she investigated the situation, including speaking with the caregiver and the client.  The client confirmed that she did not request that Ms. Larson work both shifts, and in fact, the client liked the other caregiver.  The additional shift was thus returned to the other caregiver, who was understandably upset by Ms. Larson's misrepresentation.

      As you can see from the text messages, this occurred before Ms. Larson raised any concerns about overtime compensation on October 8, 2021. Moreover, although Ms. Larson consistently stated that she was not interested in providing caregiving services and working for other clients (*see* **Exhibit B**, Text Messages Between W. Stanton and J. Larson dated 8/30/2021), on October 27, 2021, management once again offered that Ms. Larson could work with additional clients.  *See* **Exhibit C** (Text Messages Between W. Stanton and J. Larson dated 10/27/2021).  Not only did Ms. Larson decline management's offer, but in response to being asked to attend a meeting on October 29, 2021, Ms. Larson voluntarily declined to work her scheduled shifts that weekend.  Clearly these facts undermine her retaliation claims.

      Again, we believe that settlement is in the best interest of all parties.  Please let me know your client's response to the offer set forth above.  I look forward to hearing from you.

                                              Very truly yours,

                                              Steven W. Ray
                                              Counsel for Defendants

Enclosures a/s

# EXHIBIT A

## TEXT MESSAGES BETWEEN W. STANTON AND J. LARSON DATED 10/6/2021



Joyce

a couple other things so that's why i felt today won't work.

Ok sounds good, maybe we can try for tomorrow.

Liz came in about her pay. She said ms fox loves her and I have not told her anything.

I'm going to give her this Saturday

I don't know how to tell her yet

I'm looking for something else for her which she



Joyce

I'm looking for something else for her which she would do but I feel horrible taking away this Saturday. Im going to talk to Kendra about how to handle it but if she says give it to you then I will. I'll let you know later

Because I know that's what Ronnie asked for

Just let her know that the Fox's like her, but they Know I'm no longer in the office.

They want me on

  11:13 AM   66%



Joyce >

Saturday as well as Sunday. I'm sure she will understand.

She knows you are no longer in the office

I'm confused, since the family is requesting me to work on Sat and Sunday. And you told me that what they wanted and you offered me the Saturday's

I'm giving you the Saturday's

Starting this Saturday..??

   

      



**Joyce**

Starting this Saturday..??

Yes I told her

Ok Thank you.

She said you finally made your move and she is not surprised

Are you kidding me she repetitively said she was going to quit...!!!

Yes she did

Wed, Oct 6, 6:06 PM

I was wondering if you

# EXHIBIT B

## TEXT MESSAGES BETWEEN W. STANTON AND J. LARSON DATED 8/30/2021

**Joyce**

> Hey I was just thinking about when Kendra was talking. You are not going to quit are you?

Wendy, I Love this job. And I Love working for you.
But to be honest, one of the reasons I applied for this jobs was. I asked you in our first conversation, this is not a Caregiver position is it..??
You said NO..!!

I understand what Kendra said and as a business



Joyce

Your right, I do Caregive at Mrs.Fox but I do so 1- because she's such an amazing woman and she is so Sweet. 2- I work there so I could make some extra money to get my home.

I was hurt by what Kendra said, I've always stepped up to help this company. I've done in more in 6 months than what my predecessor couldn't or wouldn't do in over a year.

I've worked hard for this

# EXHIBIT C

## TEXT MESSAGES BETWEEN W. STANTON AND J. LARSON DATED 10/27/2021



**Joyce**

Wendy
Again I'm not able to make a mandatory meeting today.
Please schedule it for Monday.

> We are willing to wait for you after the last doctor. We can even meet in the evening. But No we can't have you in the field until you come in me for a mandatory meeting

Then I suggest you find someone to work Mrs. Fox this weekend because I am not able to come into



**Joyce**

Then I suggest you find someone to work Mrs. Fox this weekend because I am not able to come into the office today.

Are you resigning?

Or do you plan on meeting on Monday?

I did not say I was resigning, you were the one that set the parameters about the meeting.

You indicated that you cannot have me in the