IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOYCE LARSON, *individually and on behalf of all persons similarly situated*, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 5:21-cv-00077 ) |
| v. | ) **MEMORANDUM OPINION** ) |
| TRUE SELECT, LLC, d/b/a FIRSTLIGHT HOME CARE, *et al.*, | ) ) ) By: Hon. Thomas T. Cullen ) United States District Judge |
| Defendants. | ) |

Joyce Larson noticed something odd in her two biweekly paychecks. Even when she worked more than 40 hours a week, she didn't receive any overtime. Larson claims that when she asked her supervisor, Wendy Stanton, about the discrepancy, Stanton told her that the company's policies were what they were and would not change. So Larson complained to her coworkers. That perceived rabblerousing apparently caught the attention of Kendra Ghanbari, the company's owner, who invited Larson and Stanton to a meeting. There, Ghanbari and Stanton asked Larson to stop discussing the company's overtime policies with other workers and to start discussing any potential legal claims with them. She declined, and clams that Ghanbari fired her as a result.

In response, Larson filed this lawsuit. Her complaint states a collective action suit under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), a personal retaliation claim under the same statute, *id.* § 215(a)(3), and a Rule 23 class action suit under the Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29.2.

Larson's motion for conditional certification of her FLSA collective action is before the court. (*See* Pl.'s Mot. Conditional Certification [ECF No. 13].) For the reasons below, Larson's motion will be granted with modifications.

## I. BACKGROUND

Larson started working for FirstLight Home Care ("FirstLight") in March 2021. (Class & Collective Action Compl. ¶ 3 [ECF No. 1] ("Compl.").) When Larson began, she worked as an Office Assistant (for 40 hours a week) and as a Home Care Worker (for 24 hours a week). (*Id.* ¶ 12.) In September 2021, she stopped working as an Office Assistant and began working exclusively as a Home Care Worker, until she was fired on November 1, 2021. (*Id.* ¶ 3.) In that role, she worked approximately 48 hours in a week on at least two occasions. (*See id.* ¶¶ 3, 13.) FirstLight never paid her overtime. (*Id.* ¶¶ 12, 14.)

Larson alleges that FirstLight's decision to not pay her overtime was a widespread practice at the company. (*Id.* ¶ 14.) Employees working for FirstLight often received two biweekly paychecks, one each from True Select LLC ("True Select") and GuardianLight of Northwestern Virginia, Inc. ("GuardianLight"). (Decl. of Joyce Larson ¶ 12, Nov. 12, 2021 [ECF No. 13-3].) The paycheck from True Select compensated the employee for services provided to clients in certain "regions" and the paycheck from GuardianLight compensated employees for services provided to clients in other "regions." (*Id.*) Larson admits that she does not know how FirstLight assigns clients to particular regions but notes that sometimes clients from the same city are assigned to different regions. (*Id.*)

In short, Larson's contention is that True Select and GuardianLight are "alter egos" of each other, "one business with two names." (*Id.* ¶ 9; *see also* Compl. ¶ 21.) She alleges that both

companies provide home care services and do business as FirstLight Home Care. (Compl. ¶¶ 4, 5, 21.) Many people work for both companies, which share back-office staff (e.g., human resources). (*Id.* ¶ 21.) And the two companies share office space in at least four locations: Winchester, Fairfax, Charlottesville, and Woodbridge. (*Id.*)

According to Larson, FirstLight used this overlapping structure to avoid paying overtime to her and other similarly situated employees. When FirstLight employees worked more than 40 hours total in a week, but worked less than 40 hours for either True Select or GuardianLight, they did not receive overtime. (*See* Larson Decl. ¶ 13.)

In October, Larson complained to Stanton about her missing overtime and talked to other employees about FirstLight's failure to pay overtime. (*Id.* ¶ 15; *see id.* ¶ 16.) Stanton apparently told Larson that FirstLight "would not be paying Home Care Workers overtime pay." (*Id.* ¶ 15.) FirstLight then cut Larson's hours from 48 a week to 24 a week. (*Id.*)

Later that month, Ghanbari, who owns True Select and partially owns GuardianLight, learned that Larson had been discussing FirstLight's overtime policy with other workers. (*Id.* ¶ 16; Decl. of Kendra Ghanbari ¶¶ 2–5, Jan. 18, 2022 [ECF No. 16-1].) Ghanbari "demanded" that Larson come into the office to discuss the matter with her. (Larson Decl. ¶ 16.) That meeting—between Ghanbari, Stanton, and Larson—occurred on November 1, 2021. (Compl. ¶ 27.) Ghanbari told Larson that she should not be discussing overtime policies with other employees. (*Id.*). She also stated that Larson was "insubordinate and incompetent at [her] job." (Larson Decl. ¶ 16.) Larson alleges that this was the first time anyone at FirstLight had negatively characterized her job performance. (*See* Compl. ¶ 27.)

Finally, Ghanbari requested that Larson discuss any pending legal action with Ghanbari and Stanton. (*Id.* ¶ 28.) Larson declined, directing Ghanbari to Larson's counsel, so Ghanbari fired Larson. (*Id.*)

On November 3, 2021, Larson filed her complaint against True Select, GuardianLight, and Ghanbari. She alleged three causes of action: claims for overtime pay under the VOWA (Count I) and the FLSA (Count II) on behalf of herself and "classes" and a claim for retaliation under the FLSA (Count III).

This memorandum opinion concerns only her FLSA claim for unpaid overtime. Specifically, Larson asks the court to conditionally certify a collective of "Home Care Workers" comprised of "Caregivers, Home Health Aides, Certified Nursing Assistants, Care Coordinators, Companion Care Assistants and Personal Care Assistants." (*See* Pl.'s Mot. Conditional Certification at 1–2.) She further asks the court for a 60-day opt-in period and for permission to send a reminder to the putative collective after 30 days. (*Id.* at 2.)

## II.   STANDARD OF REVIEW

"The FLSA is best understood as the minimum wage/maximum hour law." *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1032 (4th Cir. 2020) (internal quotation omitted). It requires employers to pay covered employees at least time and a half for hours worked over 40 in any given week. *See* 29 U.S.C. § 207. An employee who believes that she has been wrongfully denied overtime pay can sue on behalf of herself and others "similarly situated." 29 U.S.C. § 216(b). District courts have the discretion, then, to order notice of the FLSA action to similarly situated, potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–

71 (1989).¹ These potential plaintiffs may then join the collective action by filing a written opt-in form with the court. 29 U.S.C. § 216(b); *see Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 143–44 (4th Cir. 2018). Courts refer to this process as conditional certification. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 70 & n.1 (2013).

Conditional certification occurs in two-steps. The first step is often called the "notice phase." *See, e.g.*, *Edwards v. Optima Health Plan*, No. 2:20CV192, 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021). At this stage, plaintiffs bear the burden of showing that a putative collective, which has been subject to the same illegal workplace policy as the plaintiff, exists. *See Chiombol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006). This burden is "modest." *Id.*; *see also Spencer v. Macado's, Inc.*, 6:18-cv-00005, 2019 WL 4739691 at *2–3 (W.D. Va. Sept. 27, 2019) (describing the burden as "fairly lenient" and "relatively relaxed). In other words, "[c]onditional certification is liberally granted." 7 William B. Rubenstein, *Newberg on Class Actions* § 23:38 (5th ed. 2021).

But the standard is not "invisible." *Purdham v. Fairfax County Public Schools*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009). District courts in this circuit have denied conditional certification where it is clear that significant factual differences exist between the lead plaintiffs and the putative collective. *See id.* at 548–52; *cf. Stone v. SRA Intern. Inc.*, No. 3:20-CV-000626, 2014 WL 5410628, at *8–10 (E.D. Va. Oct. 22, 2014) (denying, in part, conditional certification due to concerns over the proposed collective's geographic distribution and dissimilar job duties). If a

---

¹ The Fourth Circuit has never evaluated what makes one putative plaintiff "similarly situated" to the lead plaintiff for purposes of an FLSA collective action. *See Edwards v. Optima Health Plan*, No. 2:20CV192, 2021 WL 1174724, at *2 (E.D. Va. Mar. 29, 2021).

plaintiff successfully makes this showing, the district court may exercise its discretion to facilitate notice to the purported collective. *Hoffmann-La Roche*, 493 U.S. at 169–70.

Conditionally certifying a collective under the FLSA imposes costs on employers. For starters, the court generally must order defendants to turn over the non-party employee's contact information to the named plaintiff. *See Hoffmann-La Roche*, 493 U.S. at 168; *Edwards*, 2021 WL 1174724, at *3. After that, defendants must take and defend discovery against a putative collective of opt-in plaintiffs instead of just the lead plaintiffs. *Newberg* § 23:38. District courts, therefore, must guard against allowing "a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999).

The second step of conditional certification occurs after discovery. At that time, a defendant may move the court to de-certify the collective. *See, e.g.*, *Gionfriddo v. Jason Zink, LLC*, No. RDB-09-1733, 769 F. Supp. 2d 880, 886–89 (D. Md. 2011) (granting de-certification as to particular collective members); *Sharer v. Tandberg, Inc.*, No. 1:06cv626, 2007 WL 676220, at *2–3 (E.D. Va. Feb. 27, 2007) (grating de-certification as to all of the opt-in collective members). At this stage, district courts in this circuit consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Gionfriddo*, 769 F. Supp. 2d at 886 (quoting *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)).

### III.   ANALYSIS

Larson has met the modest standard of identifying a putative collective of similarly situated workers subject to the same allegedly illegal overtime policy to which FirstLight subjected her. Accordingly, her motion for conditional certification will be granted with modifications.

#### A. Larson's Presentation

Larson asks the court to conditionally certify a collective of "Home Care Workers": "Caregivers, Home Health Aides, Certified Nursing Assistants, Care Coordinators, Companion Care Assistants and Personal Care Assistants" employed by FirstLight over the last three years.[2] (Pl.'s Mot. Conditional Certification at 1.) At this stage, Larson must show that there is a putative collective of other employees who were subject to the same illegal policy or plan to which she was subject. *See Chiombol*, 475 F. Supp. 2d at 564 Larson has made this showing.

Larson's motion attaches three declarations, one of her own and two from coworkers, Monique Lassiter and Katherine Ailor. All three declarants worked as Home Care Workers for True Select or GuardianLight at some point during the last three years. (*See* Larson Decl. ¶ 4; Decl. of Monique Lassiter ¶ 1, Dec. 3, 2021 [ECF No. 13-4]; Decl. of Katherine Ailor ¶ 1, Nov. 12, 2021 [ECF No. 13-5]). In that capacity, they bathed, dressed, and otherwise cared for the companies' clients. (*See* Larson Decl. ¶ 7; Ailor Decl. ¶ 2.) The companies paid them hourly wages. (Larson Decl. ¶ 11; Lassiter Decl. ¶ 4; Ailor Decl. ¶ 4.) And on at least one

---

[2] The court acknowledges FirstLight's representation that it does not employ "care coordinators." (Defs.' Opp'n Conditional Certification at 2 n.1.) Larson does not dispute this assertion in her reply brief. Accordingly, "care coordinators" will be stricken from Larson's notice.

instance, they each worked more than 40 hours in a workweek and were not paid overtime. (Larson Decl. ¶ 4; Lassiter Decl. ¶ 7; Ailor Decl. ¶ 4.)

Two of the declarations push further, explaining how FirstLight implemented this practice. Drawing on her "knowledge of working in the office," Larson alleges that "Home Care Workers would often receive two biweekly paychecks/direct deposits: one from True Select and one from GuardianLight." (Larson Decl. ¶ 12.) Monique Lassiter's declaration explains that she was one of those employees: "I would typically receive two biweekly pay checks: one from True Select and one from Guardian Light." (Lassiter Decl. ¶ 5.) Even though she "regularly worked 60 hours per workweek," she would "only occasionally be paid time and a half (overtime pay) when [she] worked more than 40 hours in a workweek." (*Id.* ¶¶ 6, 7.) She received overtime pay when she "worked more than 40 hours in the same Region, and thus was paid the overtime by either True Select or GuardianLight." (*Id.* ¶ 7.) These allegations corroborate Larson and Lassiter's suspicions that FirstLight assigned clients to regions "to avoid paying overtime compensation for Home Care Workers who work many hours in the same workweek for clients in multiple Regions." (Larson Decl. ¶ 12; Lassiter Decl. ¶ 5.)[3]

Whether to grant conditional certification and facilitate notice to the purported collective is discretionary. *See Hoffmann*, 493 U.S. at 169–70. Larson has presented the court with three declarations, all alleging the same illegal practice. Two of those declarations explain how FirstLight's corporate structure is organized to facilitate this practice. While the court notes that three sworn declarations will not always be enough to warrant conditional

---

[3] Larson's allegations on behalf of the collective suggest that FirstLight designed its corporate structure to avoid paying overtime. The courts finds that any such violation would be willful. Accordingly, Larson's notice will reflect a three-year statute of limitations. *See* 29 U.S.C. § 255(a).

certification, it is here. *See Clark v. Williamson*, No. 1:16cv1413, 2018 WL 1626305, at *1–4 (M.D.N.C. 2018) (named plaintiff's sworn declaration sufficient by itself); *Ruiz v. Monterey of Lusby, Inc.*, No. DKC 13-3792, 2014 WL 1793786, at *3 (D. Md. May 5, 2014) (declarations from both named plaintiffs sufficient).

Further, the court finds that Larson's retaliation claim against FirstLight contributes to the "modest factual showing" required at this stage. Where a plaintiff has alleged retaliation, additional purported collective members may be "afraid of retaliation from their employer[] if they join [the lead plaintiff's] lawsuit." *Cf. Ruiz*, 2014 WL 1793786, at *3 (granting conditional certification, in part because of plaintiffs' assertion that other putative collective members were afraid of retaliation); *Ware v. AUS, Inc.*, No.RDB-16-3909, 2017 WL 1354143, at *3 (D. Md. Apr. 13, 2017) (same). This fear of reprisal can suppress the number of eligible collective members who choose to join a plaintiff's nascent suit and who are willing to submit supportive materials, like declarations and affidavits, on her suit's behalf. Here, Larson's allegation that FirstLight fired her for complaining about its overtime policies weighs in favor of granting conditional certification.

Accordingly, the court will exercise its discretion to grant Larson's motion for conditional certification.

**B. FirstLight's Counterarguments**

FirstLight offers several general arguments in rebuttal, each attempting to distinguish Larson from her proposed collective or the purported collective members from each other. Broadly stated, these arguments are: Larson worked a set schedule for one client instead of an as-needed schedule for multiple clients; Larson provided companion care services but many

of the job titles in her purported collective provided health-based services; Home Care Workers work out of different offices; some Home Care Workers provide companion-based services while others provide health-based services; and some Home Care Workers are paid hourly rates while others are paid a flat rate. (*See* Defs.' Opp'n Conditional Certification at 4–10.)

Although these facts distinguish Larson and some groups of purported collective members from other purported collective members, they do not suggest that Larson is an improper representative of the collective. The members of a collective need not be "identical." *See Edwards*, 2021 WL 1174724, at *4; *Spencer*, 2019 WL 4739691, at *2. The nub of Larson's claim is that certain FirstLight employees occasionally worked more than 40 hours in a given workweek and were not paid overtime for that work. Nothing about an employee's title or specific responsibilities, then, determines whether he is eligible for membership in Larson's purported collective. *See, e.g.*, *Edwards*, 2021 WL 1174724, at *5–7 (conditionally certifying a collective of "Care Management Employee[s]" with at least six job titles); *Clark*, 2018 WL 1626305, at *4 (conditionally certifying a collective of "home healthcare workers" with three different job titles). In sum, FirstLight has not presented the court with a legally relevant reason that Larson is an improper representative of her purported collective.

FirstLight makes three more specific arguments against Larson's attempt to bring suit on behalf of a proposed collective. First, FirstLight claims that it has offered Larson a full recovery for both her FLSA and VOWA claims. (Defs.' Opp'n Conditional Certification at 4–10.) Second, Larson is one of only a few individuals who worked more than 40 hours split between True Select and GuardianLight. (*Id.* at 4–5.) Third, Larson's retaliation claim would

predominate over the collective's FLSA claims. (*Id.* at 10–11.) The court will consider each argument in turn.

First, Larson's rejection of FirstLight's settlement offer does not distinguish her FLSA claim from the purported collective member's FLSA claims. FirstLight offered Larson her unpaid overtime (based on its calculations), attorney's fees, and a court-supervised settlement. (ECF No. 16-6, at 2.) She declined. "[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016).

Next, the size of this potential collective is of limited importance. FLSA collective actions have no numerosity requirement. *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) ("[T]he requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)."); *Clark*, 2018 WL 1626305, at *2–3 & n.4 (collecting cases from district courts in this circuit holding the same).

Finally, Larson's pending claim for retaliation will not predominate future proceedings. As Larson puts it, "Employers may not avoid collective (or class) wage and hour liability by merely terminating the named plaintiff's employment in violation of the anti-[retaliation] provisions of the FLSA and then claim that the named plaintiff is not an appropriate representative because Defendants terminated her employment in violation of the law." (Pl.'s Reply Mot. Conditional Certification at 9 [ECF No. 17].) In the court's mind, that framing is enough to sink this argument.

## C. Notice Period

Having conditionally certified Larson's FLSA collective action, the court must also address the proper form of notice to the collective. "The FLSA manifests a preference that when collective action certification is granted, a court-controlled notice be provided to potential putative plaintiffs, rather than permitting unregulated solicitation efforts to secure joinder by those individuals." *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 456 (M.D.N.C. 2015) (internal quotation omitted). Once a collective action has been conditionally certified, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *See Hoffman*, 493 U.S. at 170–71. "Courts also have broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Clark*, 2018 WL 1626305, at *7 (alteration adopted).

As initial matters, FirstLight does not contest the propriety of notice if the court conditionally certifies a collective or Larson's sending notice through postal mail, email, and text message. Instead, FirstLight objects to permitting Larson to send a 30-day reminder. FirstLight also requests that the court add its own counsel's contact information on the notice.

The court has broad discretion over whether to permit Larson to send reminders to the purported collective. *See Clark*, 2018 WL 1626305, at *7. On the one hand, some district courts have said that reminders are consistent with the "FLSA's intentions to inform as many plaintiffs as possible of their right to opt into a collective action." *See id.* (quoting *Walters v. Buffets, Inc.*, No. 6:13-CV-02995, 2016 WL 4203851, at *1 (D.S.C. Mar. 1, 2016)). On the other hand, some district courts have concluded that reminders "stir up litigation and inappropriately

encourage plaintiffs to join the suit." *See Byard v. Verizon W.V., Inc.*, 287 F.R.D. 365, 373 (N.D. W.Va. Oct. 24, 2012) (internal quotation omitted) (collecting cases).

Here, the court will allow Larson to send reminders for three reasons. First, although Larson initially requested a 60-day opt-in period, she has assented to Defendants' request for a 45-day opt-in period.[4] *Mendoza v. Mo's Fisherman Exch., Inc.*, No. ELH-15-1427, 2016 WL 3440007, at *20 (D. Md. June 22, 2016) (describing a 90-day notice period as "standard"); *Stone*, 2014 WL 5410628, at *11 (ordering 90-day period); *Clark*, 2018 WL 1626305, at *8 (ordering 60-day period). Second, courts frequently allow for reminders in employment settings where some employees often work away from their homes and are less likely to congregate in an office together. *See Clark*, 2018 WL 1626305, at *7; *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 775–76 (E.D. Tex. 2015); *see also Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 609 (D. Md. 2020) (declining to issue a reminder, in part because of posted notice at the workplace). Third, a reminder would help mitigate any hesitancy among eligible Home Care Workers caused by Larson's allegedly retaliatory termination.

Finally, FirstLight's request to include its own counsel's contact information in the notice will be rejected. "Including contact information for defense counsel in the [] notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion." *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010); *see also Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921–24 (11th Cir. 2014) (observing that pre-opt-in "*ex*

---

[4] In her reply brief, Larson agreed to shorten her requested opt-in period from 60 days to 45 days if the court would allow her to send reminders. (Pl.'s Reply Mot. Conditional Certification at 12.) Defendants had also requested a 45-day opt-in period in their opposition filing. (Defs.' Opp'n Conditional Certification at 4–10.) So the court will set the opt-in period for 45 days.

*parte* communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety" and collecting cases in which district courts have sanctioned or enjoined employers engaged in such efforts).

For the reasons above, the court will shorten the notice period from 60 days to 45 days and allow Larson to send reminders to potential collective members after 30 days.

### IV.    CONCLUSION

Larson's motion to for conditional certification of her proposed collective (ECF No. 13) will be granted with modifications.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 11th day of February, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE