IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |
|---|---|
| JOYCE LARSON, *individually and on behalf of all persons similarly situated*, ) ) ) ) | |
| Plaintiff, ) | Civil Action No. 5:21-cv-00077 |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TRUE SELECT LLC, d/b/a ) FIRSTLIGHT HOME CARE, *et al.*, ) ) | By:   Hon. Thomas T. Cullen United States District Judge |
| Defendants. ) | |

This collective action to recover unpaid wages[1] under the Fair Labor Standards Act ("FLSA") is before the court on Plaintiff Joyce Larson's unopposed motion for approval of the proposed FLSA collective action settlement. (ECF No. 56.) Because this case involves claims brought under the FLSA, judicial approval of the settlement agreement is required, and the court must ensure that the proposed settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Foods Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982). After considering the parties' representations at the April 10, 2023 fairness hearing and the brief in support of the instant motion, the court will grant

---

[1] Plaintiff Joyce Larson alleges that Defendants True Select LLC, GuardianLight of Northwestern VA Incorporated, and Kendra Ghanbari (collectively "Defendants"), who are in the business of providing home-care services to those requiring hands-on home care, failed to compensate her (and the other opt-in Plaintiffs) for overtime work performed at their direction. (Pl.'s Br. Supp. Mot. for Approval p. 2, Mar. 22, 2023 [ECF No. 57].) Larson also brought claims under the Virginia Overtime Wage Act ("VOWA") and an individual claim for retaliation under the FLSA, but she did not propose those claims as class actions under Federal Rule of Civil Procedure 23. (*Id.* at 2 n.2.)

Larson's motion and approve the terms of the proposed Settlement Agreement (the "Agreement").

As this case concerns alleged underpayment of home-care workers, the court previously certified the applicable collective as:

> All persons who are working or have performed work in the Commonwealth of Virginia for True Select LLC and/or GuardianLight of Northwestern VA Incorporated as a Home Care Worker (including Caregivers, Home Health Aides, Certified Nursing Assistants, Companion Care Assistants, and Personal Case Assistants) at any time within the past three years and who were not paid overtime compensation at 150% of their applicable regular rates of pay in a workweek in which they worked in excess of forty (40) hours (collectively, "Home Care Workers" or the "FLSA Collective").

(ECF No. 23.) To date, 44 people have filed consent forms, opting-in to this collective. (Pl.'s Br. Supp. Mot. for Approval at 1 n.1.) Under the terms of the Agreement, Defendants agree to pay a total amount of $99,618, inclusive of costs and attorneys' fees, to settle the action in exchange for the Plaintiffs' release of their claims against the Defendants. (Settlement Agreement ¶¶ 5, 8 [ECF No. 56-3].)

From that $99,618 total, the parties are requesting: $22,500 to be paid to Larson to settle her retaliatory termination claim; $49,093 for attorneys' fees and costs; and $28,025 to be divided among the 44 plaintiffs who have opted-in to this litigation for individualized damages as set forth in the Agreement.[2] (Settlement Agreement ¶ 5; Pl.'s Br. Supp. Mot. for Approval at 7; Decl. of James E. Goodley ¶ 12, Mar. 22, 2023 [ECF No. 56-2].) For each

---

[2] Larson will not receive any money from the pool of $28,025 to be paid to the forty-four-member collective (*See* Settlement Agreement at 10), but the parties represent that her portion of the settlement—$22,500—includes 100 percent of her damages for approximately 28 weeks of unpaid wages ($21,859.88).

- 2 -

member of the collective who has "opted in," the Agreement sets forth a formula to determine his or her recovery, "based on the time records completed by the Plaintiffs and Opt-In Plaintiffs and data generated by the payroll program utilized by the Defendants." (*Id.*)

Accordingly, the court must evaluate whether the terms of this settlement are fair, adequate, and reasonable. To do so, the court considers the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery.

*Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014) (cleaned up); *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Here, considering the applicable factors, the court concludes that the parties have demonstrated that the proposed settlement represents a reasonable compromise of a bona fide dispute as to the Defendants alleged liability for Larson's (and other opt-in members of the collective) FLSA claims.

The relevant factors all weigh in favor of approving the settlement. The parties conducted meaningful discovery; they informally exchanged critical records, including the identities of potential collective members, payroll and wage data for these employees, an employee handbook, and Plaintiffs' counsel interviewed and obtained declarations from several affected employees. (Pl.'s Br. Supp. Mot. for Approval at 11.) This information enabled the parties to "formulate a comprehensive damage model which determined the amount of wages owed to the Plaintiffs for unpaid hours worked and overtime along with the amount

owed to Plaintiff Larson for her retaliatory termination claim." (*Id.*) And this damage model was used by the parties to negotiate a fair and informed compromise. (*Id.*)

Next, in recognizing the risks associated with continued litigation, the parties reached the instant settlement after an arms-length negotiation facilitated by Magistrate Judge Joel C. Hoppe, who is experienced in wage-and-hour claims. There is no evidence or suggestion of fraud or collusion in the proposed settlement, and counsel have taken efforts to minimize the costs and expense of this litigation in favor of a speedy and just resolution of the dispute. Moreover, counsel is experienced in these types of claims, and that experience is evident in the settlement they propose in this case.

Finally, the proposed settlement is a reasonable compromise of a bona fide dispute, and the Plaintiffs are receiving full relief now, as opposed to what they may recover at trial. Although the Plaintiffs believe that this action would be successful on the merits, there are numerous points of contention, each of which have the potential to substantially limit, or eliminate entirely, the scope of the Defendants' liability and the Plaintiffs' potential recovery, including:

> (1) Whether the Plaintiffs were entitled to overtime for any hours worked; (2) whether the Statute of Limitations under the FLSA and VOWA would preclude the Plaintiffs from recovering any unpaid overtime wages;[3] (3) whether the Defendants (willfully) obfuscated the Plaintiffs' pay by having wages paid through separate entities; and (4) whether Plaintiff's employment was terminated as a result of her protected complaints about wages.

---

[3] The FLSA look-back period is two years, with a third year being added for willful violations. *Ellis v. Crossmark, Inc.,* No. 7:13CV347, 2014 WL 12920974, at *1 (W.D. Va. June 4, 2014).

(Pl.'s Br. Supp. Mot. for Approval at 14.) If Plaintiffs continue to litigate this case, their recovery may be limited (or precluded) on these grounds, and they are not guaranteed to prevail at trial. Instead, the Agreement provides the Plaintiffs with relief that they *might* be able to obtain after months, or years, of future litigation. And considering that the opt-in Plaintiffs who form the collective will receive more than 90% of their disputed unliquidated wage damages,[4] even after payment of attorneys' fees and costs, means the amount of settlement in relation to the potential recovery strongly favors approval of the proposed settlement. Moreover, while Larson is not being compensated from the same pool as the collective, she is recovering just over 100 percent of her damages for her retaliation claim. (Goodley Decl. ¶ 14.) It is doubtful that Plaintiffs would achieve such a favorable outcome if this case went to trial.

Lastly, regarding the Agreement's provision of attorneys' fees, the court finds an award of $49,093.00 to be reasonable under the circumstances. Under the FLSA, the court shall, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). But the FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure that counsel is adequately compensated and that no conflict of interest taints the amount the wronged employee[s] recover under the Settlement Agreement." *Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 210 WL 1813497, at *1 (W.D. Va. May 5, 2010) (cleaned up) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). When assessing the fairness of a court-

---

[4] Of the 44 opt-in Plaintiffs, 32 have either no unpaid wages or less than $100 in unpaid wages, and those opt-in Plaintiffs will nevertheless receive $100 in settlement monies. (Pl.'s Br. Supp. Mot. for Approval at 15 n.7.)

- 5 -

ordered fee award, courts typically utilize the lodestar analysis.[5] *Lyle v. Food Lion, Inc.*, 954 F.2d 982, 988 (4th Cir. 1992).

Here, Plaintiffs' counsels' collective lodestar is $60,154.77, which is far greater than the $49,093 provided for in the settlement agreement. (*Compare* Goodley Decl. ¶ 22 *with* Settlement Agreement ¶ 5.) Moreover, the award of attorneys' fees was negotiated separate and apart from the other awards prescribed by the Agreement, and there is no indication that an award in this amount would detract from the award to Larson or the opt-in Plaintiffs. Finally, considering the Fourth Circuit's recognition that fee awards to counsel further the remedial goals of the FLSA by enabling plaintiffs to obtain the assistance of competent counsel, *Brandon v. Guilford Cty. Bd. Of Elect.*, 921 F.3d 194, 199–200 (4th Cir. 2019), the court deems this award to be reasonable, even when considering the award in relation to the Plaintiffs' recovery. *See Davis v. BT Ams. Inc.*, No. 2:16-cv-206 2017 U.S. Dist. LEXIS 228126, at *16 (E.D. Va. May 10, 2017) ("Although the attorneys' fees total $9,000 and represent 75 percent of the total recovery under the Settlement Agreement, 'in FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.'" (quoting *Spencer v. Cent. Servs., LLC*, No. CCB 10-03469, 2012 WL 142978, at *4 n.4 (D. Md. Jan. 13, 2012)).

In sum, the relevant factors strongly favor the proposed FLSA settlement. Accordingly, the court finds that the proposed settlement represents a fair, reasonable, and adequate

---

[5] A counsel's lodestar is calculated by multiplying the number of hours reasonably worked by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

resolution of a bona fide dispute. It is hereby **ORDERED** that Plaintiff's unopposed motion (ECF No. 56) is **GRANTED**, the terms of the parties' proposed settlement are **APPROVED**, and this action is **DISMISSED WITH PREJUDICE**. The court will **RETAIN** jurisdiction over this matter to enforce the terms of the settlement.

The Clerk is directed to forward a copy of this Order to all counsel of record.

**ENTERED** this 10th day of April, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE